**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

THOMAS DALLIO,

                                        Plaintiff,

        v.                                                      No. 06-CV-1154
                                                                   (GTS/DRH)
SCOTT SANTAMORE; WILLIAM COMSTOCK;
FRANK BUKSA; AMOS LeCLAIRE; ALICIA
McGUOIRK; LAWRENCE HOPKINSON; CRAIG
RAMSDELL; ANDREW BOUCHEY; PAUL GILMORE;
DONALD QUINN; ROY GIRDICH; C.O. GETTMAN;
LT. O'CONNELL; R.N. KIMBERLY PERREA; R.N.
LILLIAN RILEY; and R.N. DEBRA SMITH,

                                        Defendants.
_____

**APPEARANCES:**                                **OF COUNSEL:**

THOMAS DALLIO
Plaintiff Pro Se
88-T-2364
Upstate Correctional Facility
Post Office Box 2001
Malone, New York 12953

HON. ANDREW M. CUOMO                      DEAN J. HIGGINS, ESQ.
Attorney General for the                 Assistant Attorney General
    State of New York
Attorney for Defendants
The Capitol
Albany, New York 12224-0341

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

                **REPORT-RECOMMENDATION AND ORDER**[1]

        Plaintiff pro se Thomas Dallio ("Dallio"), an inmate in the custody of the New York State

_____

        [1]This matter was referred to the undersigned for report and recommendation
pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.3(c).

Department of Correctional Services ("DOCS"), brings this civil rights  action pursuant to 42

U.S.C. §§ 1981, 1983, and 1985 alleging that defendants, sixteen DOCS employees,

violated his constitutional rights under the Eighth Amendment.  Compl. (Docket No. 1).

Presently pending is the motion of fifteen of the defendants[2] for summary judgment

pursuant to Fed. R. Civ. P. 56.  Docket Nos. 78, 79, 83, 84.  Dallio opposes the motion.

Docket No. 85.  For the following reasons, it is recommended that the motion be granted in

part and denied in part.


## I. Background

The facts are related herein in the light most favorable to Dallio as the non-moving

party.  See subsection II(A) infra.


### A. The Incident

On November 10, 2003, defendants Scott Santamore and William Comstock,

corrections officers at Upstate Correctional Facility, arrived at Dallio's cell to escort him to a

holding area while his cell was searched.  Compl. ¶ 19; Comstock Decl. (Docket No. 78-11)

---

[2]Defendant R.N. Debra Smith has never been served with process or other wise appeared in the action.  See Docket Nos. 11 (summons returned unexecuted as to Smith after service was attempted by the United States Marshals Service), 36 & 38 (answers filed for 11 defendants except Smith), 78-1 (defendants' motion herein filed on behalf of all defendants except Smith).  Under Fed. R. Civ. P. 4(m), a complaint must be served upon a defendant within 120 days.  See also N.D.N.Y.L.R. 4.1(b) (same).  The complaint herein was filed on September 27, 2006 and the summonses were issued on November 20, 2006.  Docket No. 1; Docket entry dated Nov. 20, 2006.  Thus, more than 120 days have elapsed without completion of service of process on Smith.  Accordingly, it is recommended that the complaint be dismissed without prejudice as to Smith in accordance with Rule 4(m) and Local Rule 4.1(b).

¶ 1; Santamore Decl. (Docket No. 78-10) ¶ 2.  After the search, Santamore and Comstock escorted Dallio back to his cell and instructed him to stand against the wall so that his waist chain could be removed. Comstock Decl. ¶¶ 1-3; Santamore Decl. V 3.  The waist chain was removed, Dallio was ordered to turn and proceed into his cell, and when Dallio turned, he punched Comstock in the face.  Comstock Decl. ¶¶ 3-5; Santamore Decl. ¶¶ 5-7; Dallio Decl. (Docket No. 85-2) ¶ 6; Dallio Dep. Tr. (Docket No. 78-14) at 26.  A struggle ensued as Comstock, Santamore, and Dallio all fell into Dallio's cell.  Comstock Decl. ¶ 6-8; Santamore Decl. ¶¶ 8-12.

An alarm was sounded and a response team composed of defendants Alicia McGuoirk, Amos LaClaire,[3] Frank Buksa, Craig Ramsdell, Lawrence Hopkins, and Paul Gilmore quickly arrived at Dallio's cell.  Docket No. 78, Ex. D at 28, 32-35; LaClaire Decl. (Docket No. 78-4) ¶ 1; Buksa Decl. (Docket No. 78-5) ¶ 1; Ramsdell Decl. (Docket No. 78-6) ¶ 2; Hopkinson Decl. (Docket No. 78-7) ¶ 2; Gilmore Decl. (Docket No. 78-9) ¶¶3-5.  Dallio immediately fell to the ground, was restrained, and ceased physical resistance but was then kicked and punched over twenty times in his face, abdomen, back, and legs.  Dallio Decl. ¶¶ 2, 6-7,15; Dallio Dep. at 31-37.  Gilmore and McGuoirk stood by while Santamore, Comstock, LaClaire, Buksa, Ramsdell, and Hopkinson assaulted Dallio.  Dallio Decl. ¶¶ 16, 18.[4]  During the incident, Dallio's arms (Gilmore Decl. ¶ 13; Hopkinson Decl. ¶¶ 3-4; LaClaire Decl. ¶ 2; Docket No. 78, Ex. D at 33, 35) and legs (Gilmore Decl. ¶ 12; Ramsdell Decl. ¶ 4; Buksa Decl. ¶ 1; Docket No. 78, Ex. D at 32, 34) were restrained, immobilized

---

[3]The complaint spells the name as "LeClaire."  Compl.  The correct spelling is LaClaire."  See LaClaire Decl. (Docket No. 78-4).  The correct spelling will be used herein.

[4]Defendants dispute Dallio's account.

with a bed sheet (Gilmore Decl. ¶¶ 12, 14, 15; Buksa Decl.  ¶¶ 1-2), and Dallio was placed

under his bunk without further incident.  Gilmore Decl. ¶ 16; Buksa Decl. ¶ 3; Docket No. 78,

Ex. D at 32.[5]  Dallio was then left alone in his cell.[6]

Later that day, Dallio was issued a misbehavior report which charged him with violating

a direct order, assault on a staff member, and violent conduct.  Docket No. 78, Ex. D at 22.

A disciplinary hearing was conducted on the charges and at its conclusion, Dallio was found

guilty of all three charges.  Docket No. 78, Ex. D at 17; see also Docket No. 78, Ex. D at 68-

150 (disciplinary hearing transcript).  After administrative appeals, Dallio received a total

sentence of twenty-four months in the special housing unit (SHU)[7] and twenty-four months

loss of packages, commissary, and telephone privileges.  Docket No.78, Ex. D at 13-16.

---

[5]A video tape was made by a surveillance camera fixed on the hallways outside Dallio's cell which shows the events which occurred outside the cell but not those inside. It also contains sound recordings of the raised voices while the parties were inside the cell. See Video (Docket No. 78-20).  The video shows Dallio strike Comstock, Comstock, Santamore, and Dallio then tumbling into Dallio's cell, and officers responding to the cell. Dallio can be heard on the tape yell that he was not resisting and that excessive force was occurring.  Id.; see also Dallio Dep. Tr. at 28 (testifying that he agreed that the video was an accurate depiction of what occurred in the hallway).

[6]McGuoirk was then sent back to Dallio's cell to check on him and heard strange noises coming from his cell.  McGuoirk Decl. ¶ 4.  McGuoirk observed Dallio hitting his head and rubbing his face against the wall multiple times.  Id. ¶¶ 4-6.  McGuoirk reported this behavior to Gilmore and the medical department.  Id. ¶ 7.  McGuoirk then returned to Dallio's cell and observed him engaging in the same activity.  Id. ¶¶ 8-9.  Dallio now denies this conduct, but during an interview with the DOCS Inspector General's investigator, Dallio admitted to hitting his head against the wall of his cell in frustration after the incident.  Docket No. 83, Ex. E at 169.

[7]SHUs exist in all maximum and certain medium security facilities.  The units "consist of single-occupancy cells grouped so as to provide separation from the general population . . . ."  N.Y. Comp. Codes R. & Regs. tit. 7, § 300.2(b).  Inmates are confined in a SHU as discipline, pending resolution of misconduct charges, for administrative or security reasons, or in other circumstances as required.  Id. at pt. 301.

On November 24, 2003, Dallio filed a grievance against the defendants for the alleged assault.  Docket No. 78, Ex. F at 4.  After an investigation, defendant Donald Quinn determined that "[b]ased on the documentation submitted and Inmate Dallio's lack of witnesses or evidence his allegations cannot be substantiated."  Docket No. 78, Ex. F at 7; see also Docket No. 78, Ex F at 7-60 (attachments of all documents and interviews considered during the investigation).  The grievance was denied based on the internal investigation.  Docket No. 78, Ex. F at 3.  Dallio appealed, but the denial was affirmed, based upon both the findings of the internal investigation and the outcome of Dallio's disciplinary hearing. Docket No. 78, Ex. F at 2-3.

On November 24, 2003, Dallio filed a complaint with the Office of the DOCS Inspector General (IG) concerning the incident.  Docket No. 83, Ex. E at 15-19.  After another lengthy investigation, the IG concluded that the "[m]edical documentation and photo's [we]re consistent with The Use of Force reported by [the defendants]" and that Dallio's allegations were unsubstantiated.  Docket No. 83, Ex. E at 1-2; see also Docket No. 83, Ex. E at 20-180 (compilation of all the correspondence, interviews, documentation, photographs, and records utilized by the IG in evaluating Dallio's complaints).

## B. Medical Treatment

After the incident, Dallio was taken to the medical department where defendant Kimberly Perrea, a registered nurse, and Perrea completed a physical examination.  Docket No. 78, Ex. D at 36; Docket No. 78, Ex. F at 19; Docket No. 85, Ex. I.  Examination revealed (1) bruising and superficial abrasions to the forehead, (2) bruising on both cheeks, (3) bruising and swelling of the bridge of Dallio's nose, (4) one superficial abrasion on the left

elbow, (4) superficial abrasions to the left shoulder and bruising to the left clavicle, (5)

swelling and abrasions on the right flank, (6) a bruised right knee, (7) a bruised right hip with

superficial abrasions, (8) redness throughout the middle and lower portions of Dallio's spine

and back, sternum, and front of the neck, and (9) superficial abrasions and redness on

Dallio's right wrist.  Docket No. 78, Ex. D at 36; Docket No. 78, Ex. F at 36; Docket No. 85

Ex. I.  The medical report indicated that Dallio should cleanse the areas which received

abrasions with soap and water when he returned to his cell.  Docket No. 78, Ex. D at 49;

Docket No. 78, Ex. F at 20.  During his deposition, Dallio testified that he suffered from

internal bleeding in his eye, injuries to his spinal area, difficulty walking, bruising throughout

his face and legs, and lacerations.  Dallio Dep. at 45-48.  Defendants Lt. O'Connell and Roy

Girdich both subsequently made rounds after the incident and observed Dallio's condition

and failed to take any actions.  Compl. ¶¶ 35, 44-45.

On November 11, 2003, Dallio was examined by a non-party member of the medical

staff who noted Dallio's subjective complaints of bruising on his head, legs, back and

stomach, chest pains, and difficulty breathing.  Docket No. 83, Ex. E at 144.  There was no

physician or nurse practitioner on duty due to the holiday and when Dallio was informed of

this, he became upset.  Id.  Dallio appeared in no obvious distress and could breathe easily

as he had no difficulty yelling at the nurse.  Id.  Later that day, Dallio sought emergency

treatment to see a physician but was warned that his current medical condition was not an

emergency and that further abuse of the system would result in a misbehavior report.  Id.

On November 12 and 13, 2003, Dallio complained of a spinal injury from the incident.

Docket No. 83, Ex. E at 143; see also Riley Decl. (Docket No. 78-8) ¶ 5 (noting Dallio's

complaints of discomfort, desire to see a chiropractor, the absence of objective signs of

6

distress, and that he was given Tylenol to relieve pain).  Both days, Dallio was observed standing in no distress, waving his extremities without any difficulty with his range of motion, responding easily to questions and yelling at staff to express his displeasure, and was treated with pain relievers.  Docket No. 83, Ex. E at 143; see also Riley Decl. ¶ 9 ("At times from November 10, 2003 to November 15, 2003 [Dallio] frequently yelled at me . . . .").  Additionally, Dallio complained of an injury to his right eye which was not noted to have occurred at the time of the incident.  Docket No. 83, Ex. E at 143; see also Riley Decl. ¶ 6 (noting that "medical records for November 14, 2003 reveal that other medical personnel observed no injury to either of his eyes.").  When the eye was examined, it was found to be reddened but without symptoms.   Docket No. 83, Ex. E at 143. Dallio asked to be referred to a chiropractor for his complaints of spinal pain.  Docket No. 83, Ex. E at 143.

The following two days, November 14 and 15, 2003, Dallio continued to complain about his eye injury.  Docket No. 83, Ex. E at 141-42.  Dallio was seen by optometry on July 3, 2003 and by ophthalmology on October 9, 2003, his eye was reddened, but no further treatment was indicated.  Docket No. 83, Ex. E at 141-42. Dallio was again noted to be moving all extremities without difficulty, standing in no apparent distress, ambulating without difficulty, speaking clearly, and continually yelling at medical staff.  Docket No. 83, Ex. E at 141-42.[8]  Again on November 17, 2003, Dallio was noted to have no difficulty with ambulation, movement, or speech.  Id.

On November 18, 2003, Dallio requested treatment for injuries suffered during the

---

[8]Dallio's examination was eventually terminated due to his behavior.  Docket No. 83, Ex. E at 141-42.  It was similarly terminated on November 17 due to his behavior and aggression toward staff.  Docket No. 83, Ex. E at 141.

incident.  Docket No. 83, Ex. E at 140.  Dallio was offered Tylenol and Motrin, and refused both.  Id.  He again demanded to see an eye doctor.  Id.  On November 20, Dallio lodged his last set complaints of back pain.  Id.  He again refused pain medication and was noted to be waving his arms around wildly and yelling at staff.  Id.  After twenty minutes, the examination was terminated due to Dallio's behavior.  Id.

This action followed.


## II.  Discussion[9]

In his complaint, Dallio alleges that defendants have violated his Eighth Amendment rights by subjecting him to excessive force, failing to intervene, and being deliberately indifferent to his serious medical needs.  Additionally, Dallio alleges that defendants conspired to falsify reports and medical records and to remain silent about his injuries after the incident to make him appear culpable for the incident.  The moving defendants seek summary judgment on all claims.


## A. Legal Standard

A motion for summary judgment may be granted if there is no genuine issue as to any material fact if supported by affidavits or other suitable evidence and the moving party is entitled to judgment as a matter of law. The moving party has the burden to show the absence of disputed material facts by informing the court of portions of pleadings,

---

[9] Initially Dallio alleged pendant state law claims for assault, battery, and negligence.  However, he has since conceded that his state law claims are barred.  Plaintiff's Memorandum of Law (Docket No. 85-3) at 13.  Accordingly, defendants' motion as to those claims should be granted.

depositions, and affidavits which support the motion. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  Facts are material if they may affect the outcome of the case as determined by substantive law.  Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  All ambiguities are resolved and all reasonable inferences are drawn in favor of the non-moving party. Skubel v. Fuoroli, 113 F.3d 330, 334 (2d Cir. 1997).

The party opposing the motion must set forth facts showing that there is a genuine issue for trial. The non-moving party must do more than merely show that there is some doubt or speculation as to the true nature of the facts.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  It must be apparent that no rational finder of fact could find in favor of the non-moving party for a court to grant a motion for summary judgment.  Gallo v. Prudential Residential Servs. 22 F.3d 1219, 1223-24 (2d Cir. 1994); Graham v. Lewinski, 848 F.2d 342, 344 (2d Cir. 1988).

When, as here, a party seeks summary judgment against a pro se litigant, a court must afford the non-movant special solicitude.  Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 477 (2d Cir. 2006).  However, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.  Anderson, 477 U.S. at 247-48.

## B. Eighth Amendment

The Eighth Amendment explicitly prohibits the infliction of "cruel and unusual punishment."  U.S. Const. amend. VIII.

9

**1. Excessive Force**

Inmates enjoy an Eighth Amendment protection against the use of excessive force and may recover damages for its violation under § 1983.  Hudson v. McMillian, 503 U.S. 1, 9-10 (1992).  The Eighth Amendment's prohibition against cruel and unusual punishment precludes the "unnecessary and wanton infliction of pain."  Gregg v. Georgia, 428 U.S. 153, 173 (1976); Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000).  To bring a claim of excessive force under the Eighth Amendment, a plaintiff must establish both objective and subjective elements.  Blyden v. Mancusi, 186 F.3d 252, 262 (2d Cir. 1999).

The objective element is "responsive to contemporary standards of decency" and requires a showing that "the injury actually inflicted is sufficiently serious to warrant Eighth Amendment protection."  Hudson, 503 U.S. at 9 (internal citations omitted); Blyden, 186 F.3d at 262.  However, "the malicious use of force to cause harm constitute[s] [an] Eighth Amendment violation per se" regardless of the seriousness of the injuries.  Blyden, 186 F.3d at 263 (citing Hudson, 503 U.S. at 9).  "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind."  Hudson, 503 U.S. at 9-10 (citations omitted).  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'"  Sims, 230 F.3d at 22 (citation omitted).

The subjective element requires a plaintiff to demonstrate the "necessary level of culpability, shown by actions characterized by wantonness."  Id. at 21 (citation omitted).  The wantonness inquiry "turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'"  Id. (quoting

Hudson, 503 U.S. at 7).  In determining whether defendants acted in a malicious or wanton manner, the Second Circuit has identified five factors to consider: "the extent of the injury and the mental state of the defendant[;] . . . the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response."  Scott v. Coughlin, 344 F.3d 282, 291 (2d Cir. 2003) (internal quotation marks and citations omitted).

In this case, the moving defendants have proffered substantial evidence to refute Dallio's claim of excessive force.  The defendants themselves have offered affidavits that the force used was only that necessary to restrain Dallio from assaulting officers further.  Dallio was found guilty of assault and that finding was affirmed on administrative appeal.  The video tape confirms Dallio's assault on Comstock.  An independent investigation by the IG found no basis for Dallio's contentions.  The physical injuries allegedly suffered by Dallio were consistent with the self-inflicted injuries observed by McGuoirk.  Opposed to this evidence are only Dallio's own testimony and his voice on the video tape asserting that the officers were assaulting him in his cell after he had been restrained.

The question presented by this motion, then, is whether any question of fact exists as to whether any defendant used excessive force against Dallio or failed to intervene to prevent the use of such force.  The evidence must be construed in the light most favorable to Dallio as the non-moving party.  So construed, Dallio's testimony and statements heard on the vido tape stand in stark contrast to the substantial evidence proffered by defendants.  This competing evidence rests on each side on the credibility of Dallio on the one hand and defendants on the other.  In these circumstances, the governing law that the evidence must

11

be viewed in the light most favorable to the non-moving party leaves no choice but to credit Dallio's version of events for purposes of this motion.  See In re Dana Corp., 574 F.3d 128, 152 (2d Cir. 2009) (holding that a court faced with a motion for summary judgment must draw all reasonable inferences in favor of the non-moving party and may not make credibility determinations or weigh the evidence, functions which are reserved to a jury and not a judge) (citing cases).

As described above, Dallio's evidence would concede that he in fact struck Comstock but that he was quickly restrained in his cell and, so restrained and defenseless, was struck repeatedly by Comstock, Santamore, LaClaire, Buksa, Ramsdell, and Hopkinson while Gilmore and McGuirk stood by and took no steps to intervene.  Despite the relatively minor injuries Dallio suffered, the defendants' actions in assaulting an inmate who was restrained and compliant could constitute a per se constitutional violation.  Thus, viewing the facts in the light most favorable to Dallio, he has proffered sufficient evidence to raise an issue of fact as to the objective prong of the Eighth Amendment analysis to require resolution by a jury.

Furthermore, if Dallio's evidence is credited, defendants' actions could be found wanton and malicious.  The need for force dramatically subsided once Dallio was restrained and compliant on the ground.  Viewing the facts in the light most favorable to Dallio, defendants continued to assault him.  This conduct could be found unreasonable and unnecessary to sustain institutional order and safety once Dallio was compliant.  Thus, such actions, as alleged by Dallio, are more than sufficient as well to raise a question of material fact as to the subjective prong of the Eighth Amendment analysis.

Accordingly, defendants' motion for summary judgment should be denied as to

defendants Comstock, Santamore, LaClaire, Buksa, Ramsdell, and Hopkinson on Dallio's claim of excessive force.


### 2. Failure to Intervene

Daillo further claims that Gilmore and McGuoirk failed to intervene when they saw the other defendants assaulting him.  Prison officials are obliged to protect prisoners from known harms.  Farmer, 511 U.S. at 829.  "Law enforcement officials can be held liable under § 1983 for not intervening in a situation where excessive force is being used by another officer."  Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citations omitted).  In order to establish liability, a plaintiff must demonstrate that "(1) the officer had a realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene."  Id.

Viewing the facts in the light most favorable to Dallio, he has raised a material issue of fact as to the failure to intervene of Gilmore and McGuoirk.  While the two defendants may not have had advanced warning that the other defendants' attack against Dallio when they responded to the alarm and arrived at Dallio's cell, it became clear when Dallio was restrained and became compliant that Gilmore and McGuoirk could and should intercede to prevent additional harm when they observed six officers punching and kicking a defenseless inmate.  Additionally, as discussed infra, a reasonable person in the officer's position would be well aware that such a use of force was contrary to an individual's constitutional rights.  Thus, crediting Dallio's evidence, by standing idly by, Gilmore and McGuoirk failed to take no reasonable steps to intervene and terminate the violation of

13

Dallio's constitutional rights.  This conclusion is further supported as to Gilmore in light of his position as a supervisor,

Therefore, defendants' motions for summary judgment on Dallio's claim against Gilmore and McGuoirk for failing to intervene should be denied.


### 3. Medical Treatment[10]

The Eighth Amendment prohibition also extends to the provision of medical care. Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  The test for a § 1983 claim is twofold. First, the prisoner must show that the condition to which he was exposed was sufficiently serious.  Farmer v. Brennan, 511 U.S. 825, 834 (1994).  Second, the prisoner must show that the prison official demonstrated deliberate indifference by having knowledge of the risk and failing to take measures to avoid the harm.  Id.  "[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."  Id. at 844.

"'Because society does not expect that prisoners will have unqualified access to healthcare,' a prisoner must first make [a] threshold showing of serious illness or injury" to

---

[10] Liberally construing Dallio's complaint, he alleges deliberate indifference to his cardiac conditions as well.  Defendants traditionally filed Dallio's medical record.  Docket No. 78, Ex. G.  There are no indications of deliberately indifferent to Dallio's treatment.  In the four months following the incident, Dallio was examined solely for cardiac issues on twenty different occasions, underwent four diagnostic tests, signed four refusals of treatment, and had one referral to a specialist.  Additionally, from June 2005 until June 2007, Dallio's medical records reflect at least sixty related examinations for cardiac care, six diagnostic examinations revealing unremarkable results, four specialist consultations, five trips for emergency medicine, and nine treatment refusals.  These 600 pages of records confirm that defendants were actively involved in Dallio's care on a near-daily basis and were neither deliberately indifferent nor delayed any treatments.  Any claims based on Dallio's alleged cardiac condition should, therefore, be denied.

state a cognizable claim.  Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003)(quoting Hudson, 503 U.S. at 9).  Because there is no distinct litmus test, a serious medical condition is determined by factors such as "(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment,' (2) whether the medical condition significantly affects daily activities, and (3) the existence of chronic and substantial pain."  Brock v. Wright, 315 F.3d 158, 162-63 (2d Cir. 2003)(citing Chance, 143 F.3d 698, 702 (2d Cir. 1998)).  The severity of the denial of care should also be judged within the context of the surrounding facts and circumstances of the case.  Smith, 316 F.3d at 185.

Deliberate indifference requires the prisoner "to prove that the prison official knew of and disregarded the prisoner's serious medical needs."  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998).  Thus, prison officials must be "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed."  Estelle v. Gamble, 429 U.S. 97, 104 (1976).  "Mere disagreement over proper treatment does not create a constitutional claim" as long as the treatment was adequate.  Chance, 143 F.3d at 703.  Thus, "disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists . . .  are not adequate grounds for a section 1983 claim."  Sonds v. St. Barnabas Hosp. Corr. Health Servs., 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001).

Defendants correctly contend that, even viewing the facts in the light most favorable to Dallio, the bleeding in his right eye, bruises, and superficial abrasions were insufficient to constitute a serious medical condition either separately or in combination.  In a recent decision in this district in another case, Dallio's Eighth Amendment claims for similar injuries sustained in another incident were deemed insufficient on a motion for summary judgment.

15

See Dallio v. Herbert, No. 06-CV-118 (GTS/GHL), 2009 WL 2258964, at *5 (N.D.N.Y. July 28, 2009) (granting judgment to defendants for lack of serious injuries where Dallio suffered black eyes, bruising in his abdomen and kidney area, kick marks to his abdomen, open lacerations and bruising on his knees, lacerations on his arms and wrists, a headache, and numbness in his hands and fingers) (citing cases).

Even assuming that Dallio has raised a question of fact on this prong, he has still failed to prove deliberate indifference to that condition. Dallio received medical attention immediately after the incident, complaining of relatively minor injuries that only required cleansing with soap and water. Docket No. 78, Ex. D at 49; Docket No. 78, Ex. F at 20. Dallio disagreed with this course of treatment, but such disagreements are insufficient to sustain a constitutional violation. Sonds, 151 F. Supp. 2d at 312.

Moreover, in the following ten days, Dallio was seen by the medical staff on eight of those days. Docket No. 84, Ex. E at 140-44. Thus, despite Dallio's conclusory allegations of a failure to provide medical treatment, the record demonstrates that medical staff treated Dallio on a near-daily basis. Such involvement with an inmate's care is not indifferent. Additionally, examination of Dallio generally revealed that he was standing and waiting at his cell door, he ambulated without any difficulty, he appeared in no physical distress, and he had no problem speaking clearly, yelling, or waving his arms at medical staff to signify his displeasure.[11] Id. Such uncontradicted determinations by multiple individuals, both parties

---

[11] Any allegations that Dallio's progressive and frequent fits of rage were exaggerated or contrived are belied by the medical record which indicates at least twenty-seven instances from June 2005 until June 2007 where Dallio showed extreme anger and yelled at staff. Additionally, from prior to the incident until January 2004, there were seventeen similar instances where Dallio became argumentative and uncooperative with medical staff generally resulting in the termination of the examination.

and non-parties to this action, belie Dallio's subjective and uncorroborated complaints of disabling pain and indifferent treatment.  Additionally, Dallio was consistently offered pain medication to increase his level of comfort.  On at least two occasions, Dallio refused this medication.  Docket No. 83, Ex. E at 140.  Dallio's voluntary actions in refusing the pain medication cannot be attributed to any alleged delay or interference by any defendant.

Furthermore, Dallio's contentions that he had injured his eye are not supported by any objective medical evidence.  While it is undisputed that Dallio suffered from a reddened eye, the cause and timing of the irritation is immaterial to this claim, for medical staff noted and evaluated the condition and determined that it was not an emergency.  Docket No. 83, Ex. E at 143.  These findings were supported by the multiple record entries, by multiple medical staff, which agreed that there was no injury to the eye.  Riley Decl. ¶ 6.  No medical evidence has been proffered by Dallio to the contrary.  Even if there was an injury and the multiple opposing medical conclusions were wrong, the misdiagnosis would, at worst, constitute negligence.  See Estelle, 429 U.S. at 107.  This is still insufficient to sustain a claim for deliberate indifference.  Id. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").

Moreover, to the extent that Dallio contends that he should have been seen by a chiropractor or eye doctor,[12] such contentions are also insufficient to support a constitutional

---

[12] Medical records indicate that Dallio had seen eye specialists on July 3 and October 9, 2003.  Docket No. 83, Ex. E at 141-42.  Additionally, records subsequent to the incident indicate an ophthalmology consult within a month of the incident as well as multiple examinations by medical staff over eye problems and broken glasses, glasses orders, and follow-up appointments and consultations.  Therefore, there is no dispute in the record on this motion that Dallio's eyes were being treated in an appropriate manner and defendants' actions neither delayed treatment nor showed deliberate indifference to Dallio's treatment.

claim. Docket No. 83, Ex. E at 143.   An inmate has no right to a physician of his or her

choosing.  See Dean v. Coughlin, 804 F.3d 207, 215 (2d Cir. 1986).  Moreover, any

decisions relating to the appropriateness or timing of a specialist consultation are within the

purview of the medical staff and any disagreement the inmate has with the decision qualifies

as a disagreement over treatment, which is not an actionable Eighth Amendment claim.

Sonds v. St. Barnabas Hosp., 151 F. Supp. 2d 303, 312 (S.D.M.Y. 2001).

Accordingly, defendants' motion as to this claim should be granted as to Perrea and

Riley.

### C. Conspiracy

Dallio alleges that all defendants conspired to violate his constitutional rights.

### 1. § 1983

In order to support a claim for conspiracy pursuant to § 1983, there must be "(1) an

agreement . . . ; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act

done in furtherance of that goal causing damages."  Ciambriello v. County of Nassau, 292

F.3d 307, 324-25 (2d Cir. 2002); Cusamano v. Sobek, 604 F. Supp. 2d  416, 468 (N.D.N.Y.

2009).  An agreement must be proven with specificity as bare allegations of a conspiracy

supported only by allegations of conduct easily explained as individual action is insufficient.

See  Iqbal v. Hasty, 490 F.3d 143,177 (2d Cir. 2007); see also Gyadu v. Hartford Ins. Co.,

197 F.3d 590, 591 (2d Cir.1999).  Thus, plaintiffs must "make an effort to provide some

details of time and place and the alleged effects of the conspiracy . . . [including] facts to

18

demonstrate that the defendants entered into an agreement, express or tacit, to achieve the unlawful end." Warren v. Fischl, 33 F. Supp. 2d 171, 177 (E.D.N.Y. 1999) (citations omitted).  Conclusory, vague, and general allegations are insufficient to support a conspiracy claim. Ciambriello, 292 F.3d at 325.

In this case, even construing the facts in the light most favorable to Dallio, he has failed to advance anything more than conclusory allegations of a conspiracy.  Dallio fails to show specifically when, where, or how defendants came together and planned to assault him. Moreover, Dallio fails to show when or how multiple departments agreed, either expressly or implicitly, to collaborate with one another and independently perpetrate the alleged web of deceit by filing false incident reports, medical records, and investigations.  Without anything more than a conclusory allegation that all defendants conspired with one another, Dallio's claims fall short of raising a material question as to whether defendants' actions constituted a conspiracy.[13]

### 2. § 1985

"Section 1985 prohibits conspiracies to interfere with civil rights." Davila v. Secure

---

[13] Dallio relies on Juan v. Rafferty, 577 F. Supp. 774 (D. N.J. 1984), to support the proposition that his assertions that all defendants filed false reports is sufficient to withstand the current motion.  Dallio's reliance is misplaced.  In Juan, (1) defendants filed a motion to dismiss as opposed to the present motion for summary judgement and (2) the litigation was in its infancy as discovery had not yet been completed.  Id. at 778. Therefore, the pleadings were sufficient at that early stage to present a basis for a claim. Id.  The present case is at a far different point.  Discovery is now complete and actual evidence rather than allegations of agreements among multiple parties must be advanced. Like Juan, Dallio has survived the pleadings stage of the litigation.  However, unlike Juan, allegations alone at this stage are insufficient as evidence must now be presented for the claim to withstand the current motion.  As no evidence was provided, the claim fails to raise a material question of fact.

Pharmacy Plus, 329 F. Supp. 2d 311, 316 (D. Conn. 2004). To state a claim for relief under § 1985(3), a plaintiff must show:

> (1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.

United Bhd. of Carpenters & Joiners of Am., Local 610 v. Scott, 463 U.S. 825, 828-29 (1983); see also Iqbal v. Hasty, 490 F.3d 143, 176 (2d Cir. 2007).  To demonstrate that a conspiracy existed, "the plaintiff must prove a mutual understanding or meeting of the minds to violate [his or] her civil rights."  Salgado v. City of N.Y., No. 00-CV-3667 (RWS), 2001 WL 290051, at *8 (S.D.N.Y. Mar. 26, 2001) (citations omitted).  "In addition, the conspiracy must be motivated by some class-based animus."  Iqbal, 490 F.3d at 176 (citations omitted).

Here, Dallio does not assert any facts giving rise to a conspiracy.  First, Dallio vaguely assert conclusory statements relating to an alleged conspiracy among defendants.  This is insufficient.  See X-Men Sec., Inc. v. Pataki, 196 F.3d 56, 71 (2d Cir. 1999).  Second, as discussed supra, there has been proffered no evidence relating to agreements, or even communications, between the  defendants, the purpose of their alleged conspiracy, or an intent by defendants to deprive Dallio of his civil rights.  Lastly, there is no evidence that any alleged conspiracy was motivated by racial- or class-based animus.

Accordingly, defendants' motion for summary judgment as to Dallio's claims of conspiracy should be granted.


## D. Bouchey and Gettman

Defendant Andrew Bouchey was named in the complaint as a member of the response

team.  Compl. (Docket No. 1) ¶ 22.  However, the undisputed evidence shows that he was

not personally involved in the incident.  As such, no personal involvement has been shown

and Bouchey is entitled to judgment on all claims against him.  Wright v. Smith, 21 F.3d 496,

501 (2d Cir. 1994) ("[P]ersonal involvement of defendants in alleged constitutional

deprivations is a prerequisite to an award of damages under § 1983.") (internal quotations

and citations omitted).

Similarly, defendant C.O. Gettman was identified in the complaint as the individual

responsible for taking the photographs subsequent to the incident.  Compl. ¶¶ 36-37.  All

submissions indicate without contradiction that the individual responsible for these

photographs was named Clarke.  See generally Docket No. 78, Ex. D at 7.  As such, no

evidence of any personal involvement has been shown with regard to Gettman either.

Accordingly, he as well should be granted judgment.  Wright, 21 F.3d at 501.


### E. Qualified Immunity

Defendants claim that even if Dallio's constitutional claims are substantiated, they are

entitled to qualified immunity.  Qualified immunity generally protects governmental officials

from civil liability "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald,

457 U.S. 800, 818 (1982); Aiken v. Nixon, 236 F. Supp. 2d 211, 229-30 (N.D.N.Y. 2002)

(McAvoy, J.), aff'd, 80 Fed.Appx. 146 (2d Cir. Nov. 10, 2003).  However, even if the

constitutional privileges "are clearly established, a government actor may still be shielded by

qualified immunity if it was objectively reasonable for the . . . official to believe that his [or

her] acts did not violate those rights." Smith v. City of Albany, No. 03-CV-1157, 2006 WL 839525 *16 (N.D.N.Y. Mar. 27, 2006) (quoting Kaminsky v. Rosenblum, 929 F.2d 922, 925 (2d Cir. 1991); Magnotti v. Kuntz, 918 F.2d 364, 367 (2d Cir. 1990) (internal citations omitted)).

A court must first determine whether, if a plaintiff's allegations are accepted as true, there would be a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). Only if there is a constitutional violation does a court proceed to determine whether the constitutional rights, of which a reasonable person would have known, were clearly established at the time of the alleged violation. Aiken, 236 F. Supp. 2d at 230. Here, the second prong of the inquiry need not be reached concerning Dallio's claims other than his Eighth Amendment excessive force and failure to intervene claims because, as discussed supra, accepting all of Dallio's evidence as true, he has not shown that any of the defendants in those claims violated his constitutional rights.

As to Dallio's excessive force and failure to intervene claims, it was clearly established by the incident on November 10, 2003 that inmates had an Eighth Amendment right to be free from excessive force and a failure to intervene. See, e.g., Hudson, 503 U.S. at 9-10. Thus, accepting all of Dallio's allegations about the incident as true, qualified immunity cannot be granted to defendants Santamore, Comstock, McGuoirk, LaClaire, Buksa, Ramsdell, Hopkinson, or Gilmore since a reasonable person in their position at the time would or should have known that the use of excessive force was a constitutional violation.

Accordingly, defendants' motion for summary judgment on this ground should be (1) granted in the alternative as to Bouchey, Quinn, Girdich, Gettman, O'Connell, Perrea, and Riley, and (2) denied as to Santamore, Comstock, McGuoirk, LaClaire, Buksa, Ramsdell,

22

Hopkinson, and Gilmore.

### III.  Conclusion

For the reasons stated above, it is hereby **RECOMMENDED** that:

   1.  Defendants' motion for summary judgment (Docket No.78) be:

      A. **GRANTED** as to defendants Bouchey, Quinn, Girdich, Gettman, O'Connell, Perrea, and Riley as to all claims against them, and these defendants should be terminated from this action; and

      B. **DENIED** as to defendants Santamore, Comstock, McGuoirk, LaClaire, Buksa, Ramsdell, Hopkinson, and Gilmore as to Dallio's Eighth Amendment claims of excessive force and failure to intervene; and

   2. The complaint be **DISMISSED** without prejudice as to defendant Smith pursuant to Fed. R. Civ. P. 4(m) and N.D.N.Y.L.R. 4.1(b).


Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.** Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of HHS, 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

Dated:  October 26, 2009
      Albany, New York

                             United States Magistrate Judge